MID WISCONSIN BANK, Plaintiff-Respondent,

v.

FORSGARD TRADING, INC. and Richard K. Forsgard,
Defendants,

LAKESHORE TRUCK & EQUIPMENT SALES, INC.,
Defendant-Appellant.

Court of Appeals

*No. 03–0123. Submitted on briefs June 16, 2003.—
Decided July 22, 2003.*

2003 WI App 186

(Also reported in 668 N.W.2d 830.)

[black redaction bars]

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Douglas R. Ross* of *Strasser & Yde, S.C.*, Wausau.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Michael D. Shiffler* of *Jensen, Scott & Grunewald, S.C.*, Medford.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J.   Lakeshore Truck and Equipment Sales, Inc., appeals from a summary judgment granted in favor of Mid Wisconsin Bank. Lakeshore argues Mid Wisconsin was not a holder in due course of a check written by Lakeshore because the bank did not take the check in good faith. We disagree and affirm the judgment.

## BACKGROUND

¶ 2.   On May 7, 2001, Lakeshore wrote a check to Forsgard Trading in the amount of $18,500.[1] The check was drawn on a bank in Ironwood, Michigan. Forsgard deposited the check in its checking account at Mid Wisconsin Bank on May 8, 2001. The Bank gave Forsgard immediate credit on the deposit.

---

[1] Richard Forsgard, the owner of Forsgard Trading, has fled to Sweden and is therefore beyond the reach of these proceedings. In this opinion, "Forsgard" refers to Forsgard Trading while Richard Forsgard will be referred to by his full name.

¶ 3. Also on May 8, Lakeshore issued a stop-payment order on the check. Mid Wisconsin received notice on May 16 that payment on the check had been stopped. The $18,500 was deducted from Forsgard's account. Due to checks written on and transfers from the account between May 8 and May 16, the deduction resulted in a negative balance in the account. There has been no further activity on the account and, as a result, Forsgard has not covered the stopped check.

¶ 4. Forsgard opened the checking account in July 1999. The account was overdrawn twenty-four times before this incident. On each of those occasions, however, Forsgard deposited money to cover the overdrafts when the Bank contacted the company.

¶ 5. Regarding deposits, Mid Wisconsin's agreement with Forsgard states, "Any items, other than cash, accepted for deposit (including items drawn 'on us') will be given provisional credit only until collection is final . . . ."

¶ 6. Mid Wisconsin's practice is to give immediate credit on deposits, but its employees may place holds on checks. For example, it may hold funds if it has reasonable doubt about a check. Examples include the depositor's account being repeatedly overdrawn within the previous six months and more than $5,000 being deposited in one day. No holds were applied to Forsgard's deposit in this case.

¶ 7. On January 8, 2002, Mid Wisconsin commenced this action against Richard Forsgard, Forsgard Trading, and Lakeshore. Mid Wisconsin claimed it was a holder in due course and therefore Lakeshore, as the drawer of the check, was responsible for the bank's losses resulting from the stop-payment order. Mid Wisconsin moved for summary judgment against Lakeshore, which was granted. Lakeshore appeals.

## STANDARD OF REVIEW

¶ 8. We review summary judgments independently, employing the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). We affirm the trial court's decision granting summary judgment if the record demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2).[2] Here, the facts are undisputed, so the only question is whether, as a matter of law, Mid Wisconsin was a holder in due course of the check.

## DISCUSSION

¶ 9. Lakeshore claims Mid Wisconsin was not a holder in due course of the check Forsgard deposited. WISCONSIN STAT. § 403.305 gives a holder in due course the right to recover from a drawer who places a stop-payment order on a check. According to WIS. STAT. § 403.302(1), a holder in due course is one who takes an instrument for value and in good faith.[3] There is no dispute Mid Wisconsin took the check for value. Lakeshore argues, however, that Mid Wisconsin did not take the check in good faith. WISCONSIN STAT. § 403.103(1)(d) defines good faith as "honesty in fact and the observance of reasonable commercial standards of fair dealing." Lakeshore concedes that Mid Wisconsin took the

---

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[3] WISCONSIN STAT. § 403.301(1) also lists other factors for determining whether a holder of an instrument is a holder in due course. Only the good faith element is disputed in this case.

check with honesty in fact, but contends Mid Wisconsin did not observe reasonable commercial standards of fair dealing.

¶ 10. First, Lakeshore contends that Mid Wisconsin's banking agreement with Forsgard did not allow it to give immediate credit, so that the Bank was not observing reasonable commercial standards when it granted the credit. The banking agreement states, "Any items, other then cash, accepted for deposit (including items drawn 'on us') will be given provisional credit only until collection is final . . . ." Lakeshore contends that this means Mid Wisconsin could not grant immediate credit. Lakeshore misinterprets the agreement. In fact, Mid Wisconsin complied with the agreement. Mid Wisconsin gave Forsgard provisional credit, which the agreement allows. When Lakeshore stopped payment on the check, the Bank deducted the amount of the check from Forsgard's account. This also was in accordance with the agreement. However, Forsgard did not cover the negative balance that resulted from the deduction.

¶ 11. Next, Lakeshore maintains that under the circumstances, reasonable commercial standards of fair dealing should have led Mid Wisconsin to place a hold on the check instead of giving immediate credit. Lakeshore notes that Richard Forsgard was a foreign citizen, the check was drawn on an out-of-state account, the check was for greater than $5,000, and Forsgard's account had been overdrawn many times in the past.

¶ 12. To begin with, Wisconsin courts have approved of the practice of extending immediate credit on deposited checks. In *Shaller v. Marine Nat'l Bank*; 131 Wis. 2d 389, 402, 388 N.W.2d 645 (Ct. App. 1986), we determined that extending immediate credit is consistent with reasonable banking standards. We stated:

689

> A non-cash deposit becomes available for withdrawal as of right only when final settlement is made for the item and a reasonable time for the bank to learn of the settlement has passed. Of course, a bank is free to give provisional credit for a deposit, retaining a right of charge-back if final settlement for the deposited item is not received.

*Id.* at 397, n.2 (citations omitted).

¶ 13.   Further, we are persuaded by the reasoning of the New Jersey Superior Court in a case with similar facts. In *Citizens Nat'l Bank v. Fort Lee S&L Ass'n*, 218 A.2d 315 (N.J. Super. Ct. Law div. 1965), a bank issued immediate credit on a check. The facts were more egregious because the account into which the check was deposited was overdrawn at the time of the deposit. The drawer placed a stop-payment order on the check, and argued that the Bank was not a holder in due course because it failed to act in good faith when it issued immediate credit.

¶ 14.   The court concluded that the fact the account was overdrawn did not constitute bad faith. *Id.* at 319. The court stated:

> It would hinder commercial transactions if depository banks refused to permit the withdrawal prior to the clearance of checks. Apparently banking practice is to the contrary. It is clear that the Uniform Commercial Code was intended to permit the continuation of this practice and to protect banks who have given credit on deposited items prior to notice of a stop payment order . . . .

*Id.* Furthermore,

> a depository bank may properly charge an account by honoring a check drawn by a depositor even though it creates an overdraft. It would be anomalous for a bank

to lose its status as a holder in due course merely because it has notice that the account of its depositor is overdrawn.

*Id.* at 317–18.

¶ 15. These cases teach that extending immediate credit is not contrary to reasonable commercial standards of fair dealing. Moreover, it does not matter whether, as here, the account had been overdrawn previously. Mid Wisconsin's policy is to place holds on checks when it has reasonable doubt about the check based on the depositor's history. Here there was no reasonable doubt. Whenever Forsgard had been overdrawn previously, it always deposited funds to cover the overdraft when the bank alerted it to the problem. Mid Wisconsin had no reason to suspect there would be any problem if immediate credit was extended for this check. Consequently, we conclude that Mid Wisconsin observed reasonable commercial standards of fair dealing and therefore was a holder in due course. Under Wis. Stat. § 403.305, Mid Wisconsin has the right to recover its losses from Lakeshore.[4]

*By the Court.*—Judgment affirmed.

---

[4] Lakeshore also argues that the right of a drawer to stop payment on a check should trump a bank's right to recover for its losses. However, Mid Wisconsin never challenged Lakeshore's right to stop payment on the check. Lakeshore was entitled to exercise its right to stop payment, but in doing so it must accept the consequences that result under Wis. Stat. § 403.305.